## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARCELORMITTAL FRANCE, )
ARCELORMITTAL ATLANTIQUE ET )
LORRAINE, and ARCELORMITTAL )
USA LLC, )
                          )
           Plaintiffs, )
                          )
      v. )            Civ. No. 13-685-SLR
                          )
AK STEEL CORPORATION, )
                          )
           Defendant. )

### MEMORANDUM ORDER

At Wilmington this |9ᵗʰ day of April, 2016, having reviewed defendant's motion to dismiss and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 48) is denied as follows:

1. **Background.** Plaintiffs filed the present action for patent infringement on April 16, 2013 for infringement of U.S. Patent No. RE44,153E ("the RE153 patent").[1] Such patent was obtained during the pendency of the appeal of Civ. No. 10-50,[2] in which action plaintiffs asserted U.S. Patent No. 6,296,805 ("the '805 patent") against defendant[3] by complaint filed in January 2010. The litigation proceeded to claim construction and trial, ending in a jury verdict in defendant's favor. On appeal, the

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1338.
[2] The procedural history of which is only recounted to the extent needed for the resolution of this motion.
[3] In addition to AK Steel Corporation, Severstal Dearborn, Inc. and WheelingNisshin, Inc.

Federal Circuit upheld the claim construction in part and reversed in part;[4] the Court also reversed the jury's verdict of anticipation. With respect to obviousness, the Court concluded that a new trial was required because the claim construction error prevented the jury from properly considering plaintiffs' evidence of commercial success. *See ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012) ("*ArcelorMittal I*"). During the appeal process, in order to "correct" the construction of "very high mechanical resistance," plaintiffs obtained the RE153 patent which added a number of dependent claims.[5] The Federal Circuit agreed with the district court that claims 1-23 were invalid, but held that claims 24 and 25 were valid. Specifically, claim 24 confined claim 1 to the construction affirmed in *ArcelorMittal I* by reciting, "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1500 MPa." Claim 25 depends on and further limits claim 24 to a coated steel sheet "that is composed predominantly of martensite." *See ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 887-88 (Fed. Cir. 2015) ("*ArcelorMittal II*").

2. On remand, the court reasoned that plaintiffs had conceded (by not addressing) the fact that the trial record had no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit. Therefore, given that the court would not allow the record to be opened on remand if the '805 patent were still at issue, there were no genuine issues of material fact as to infringement of claims 24 and 25 of

---

[4] Specifically, the Federal Circuit reversed the construction for "hot-rolled steel sheet" and upheld the construction for "very high mechanical resistance," that is, "the flat-rolled steel has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPs or greater."

[5] By memorandum and order dated December 5, 2013, the district court invalidated all claims of the RE153 patent as violative of 35 U.S.C. § 251 (d). (D.I. 19, 20, 21)

the RE153 patent and such claims were invalid as obvious.[6]  (D.I. 41, 42)  The court

also granted plaintiffs' motion for leave to file a first amended complaint replacing the

RE153 patent with U.S. Reissue Patent No. RE44,940 ("the RE940 patent"), issued on

June 10, 2014, as a continuation of the patent application that issued as the RE153

patent.

      3.  **Standard.**  A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests

the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief, in order to give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted)

(interpreting Fed. R. Civ. P. 8(a)).  Consistent with the Supreme Court's rulings in

*Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-

part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son,

Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

(3d Cir. 2009).  First, a court should separate the factual and legal elements of a claim,

accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-

11.  Second, a court should determine whether the remaining well-pled facts sufficiently

show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556

U.S. at 679).  As part of the analysis, a court must accept all well-pleaded factual

allegations in the complaint as true, and view them in the light most favorable to the

---

[6] The parties did not address the limitation of claim 25 as to invalidity.  (D.I. 41 at 11
n.16)  These decisions are on appeal.  (Civ. No. 10-50, D.I. 343)

plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536

U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In this regard, a court may consider the pleadings, public record, orders, exhibits

attached to the complaint, and documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin,*

*Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

4. The court's determination is not whether the non-moving party "will ultimately

prevail" but whether that party is "entitled to offer evidence to support the claims."

*United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir.

2011). This "does not impose a probability requirement at the pleading stage," but

instead "simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting

*Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the

court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

5. **The '940 patent.** The '940 patent contains two independent claims. Claim 17

reads:

A hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated
with an aluminum or aluminum alloy coating, wherein **said coated steel
sheet is in the form of a delivery coil and** the steel in the sheet
comprises the following composition by weight:
$0.15\% < carbon < 0.5\%$
$0.5\% < manganese < 3\%$
$0.1\% < silicon < 0.5\%$
$0.01\% < chromium < 1\%$
$titanium < 0.2\%$
$aluminum < 0.1\%$
$phosphorus < 0.1\%$
$sulfur < 0.05\%$
$0.0005\% < boron < 0.08\%$, the remainder being iron and impurities inherent
in processing, and the steel sheet has a very high mechanical resistance

4

> **in excess of 1500 MPa** after thermal treatment and the aluminum or
> aluminum alloy coating provides a high resistance to corrosion of the steel
> sheet.

(6:20-39) (emphasis added)  Claim 27 reads:

> A hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated
> with an aluminum or aluminum alloy coating, wherein the steel in the sheet
> comprises the following composition by weight:
> 0.15%<carbon<0.5%
> 0.5%<manganese<3%
> 0.1%<silicon<0.5%
> 0.01%<chromium<l%
> titanium<0.2%
> aluminum<0.1%
> phosphorus<0.1%
> sulfur<0.05%
> 0.0005%<boron<0.08%, the remainder being iron and impurities inherent
> in processing, and the steel sheet has a very high mechanical resistance
> **in excess of 1500 MPa** after **a subsequent** thermal treatment, and the
> aluminum or aluminum alloy coating provides a high resistance to
> corrosion **and prevents decarburization during said subsequent
> thermal treatment of the steel sheet**.

(7:1-26) (emphasis added)  Despite plaintiffs' characterization of the '940 patent claims

as "materially different," the two independent claims are strikingly similar to that which

came before.  Claim 1 of the RE153 patent reads:

> A hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated
> with an aluminum or aluminum alloy coating, wherein the steel in the sheet
> comprises the following composition by weight:
> 0.15%<carbon<0.5%
> 0.5%<manganese<3%
> 0.1%<silicon<0.5%
> 0.01%<chromium<1%
> titanium<0.2%
> aluminum<0.1%
> phosphorus<0.1%
> sulfur<0.05%
> 0.0005%<boron<0.08%, the remainder being iron and impurities inherent
> in processing, and the steel sheet has a very high mechanical resistance
> after thermal treatment and the aluminum or aluminum alloy coating
> provides a high resistance to corrosion of the steel sheet.

5

(RE153 patent, 5:9-26)  Claims 24 and 25 read:

> 24. The coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1500 MPa.
>
> 25. The coated steel sheet of claim 24 that is composed predominantly of martensite.

(RE153 patent, 6:52-55)

6. **Complaints.** In Civ. No. 10-50, plaintiffs alleged that defendant "has been and is now making, using, selling, or offering for sale, within the United States, aluminum coated boron steel products which infringe one or more claims of the '805 patent." (Civ. No. 10-50, D.I. 1 at ¶ 11)  In the case at bar, plaintiffs alleged in the initial complaint that defendant "makes, offers to sell and/or sells aluminum coated, boron-containing steel sheet products in the United States[, . . . which] are formed by a process involving, among other things, hot rolling, cold rolling, and coating the steel with aluminum."  Plaintiffs further alleged that the "steel sheet products are intended for further processing, including heat treatment and stamping, to form, inter alia, components for use in automobiles."  This further processing results in the steel sheet products having "an ultimate tensile strength greater than 1000 MPa, and at least some of the products have an ultimate tensile strength greater than 1500 MPa."  Plaintiffs concluded that "automotive parts suppliers, among others, directly infringe one or more of the claims of the RE153 patent when they make, use, offer to sell and/or sell steel meeting the limitations of those claims, or products incorporating steel meeting the limitations of those claims."  Moreover, "to the extent that [defendant] makes, offers to sell and/or sells steel meeting the limitations of one or more of the claims of the RE153 patent, it also directly infringes those claims." (D.I. 1 at ¶¶ 15-17)

6

7. In the amended complaint, plaintiffs similarly allege that defendant "makes, offers to sell and/or sells . . . steel sheet products in the United States[, which] . . . are formed by a process involving, among other things, hot rolling, cold rolling, and coating the steel with aluminum." The steel sheet products "are intended for further processing, including heat treatment and stamping, to form, inter alia, components for use in automobiles." The further processing results in "at least some of the products hav[ing] an ultimate tensile strength greater than 1500 MPa and a predominantly martensitic microstructure." Therefore, "automotive parts suppliers, among others, directly infringe one or more of the claims of the RE940 patent when they make, use, offer to sell and/or sell steel meeting the limitations of those claims, or products incorporating steel meeting the limitations of those claims." Moreover, "to the extent that [defendant] makes, offers to sell and/or sells steel meeting the limitations of one or more of the claims of the RE940 patent, [defendant] also directly infringes those claims. (D.I. 43 at ¶¶ 16-18)

8. **Issue preclusion.** Issue preclusion, also called collateral estoppel, applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Anderson v. C.I.R.*, 698 F.3d 160, 164 (3d Cir. 2012) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)). "[P]roof of [non]-infringement by collateral estoppel is only appropriate in limited circumstances, where it is shown that a close identity exists between the relevant features of the accused device and the device previously determined to be [non]-infringing." *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1333 (Fed. Cir. 2008); *see also Brain Life, LLC v. Elekta Inc.*, 746 F.3d

7

1045, 1055 (Fed. Cir. 2014) ("[T]he trial court's findings that [defendant's] products . . . were not materially different from the products at issue in the [prior litigation] would bar plaintiff from asserting those claims."); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (noting that claim preclusion does not apply with respect to infringement unless the accused device and the device previously held infringing are "essentially the same," meaning that the differences between them are merely "colorable" or "unrelated to the limitations in the claim of the patent") (citations omitted); *Del Mar Avionics, Inc., v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987) (holding that claim preclusion did not apply because a "device not previously before the court, and shown to differ from those structures previously litigated, requires a determination on its own facts").

9. The parties disagree on whether the accused steel sheet products are the same as those involved in the prior action. Specifically, in Civ. No. 10-50 (after the substitution of the RE153 patent for the '805 patent), defendant's steel sheet products were found non-infringing as to claims 24 and 25 of the RE153 patent requiring a very high mechanical resistance in excess of 1500 MPa, based on the court's finding no record evidence of the accused steel sheet products having an ultimate tensile strength above 1500 MPa. (D.I. 41 at 6)

10. According to defendant, the judgment of non-infringement in Civ. No. 10-50 prevents plaintiffs from asserting that the steel sheet products at issue directly infringe the claims of the RE940 patent, as the independent claims each contain a limitation requiring a very high mechanical resistance in excess of 1500 MPa. (D.I. 49) Defendant explains that plaintiffs have "pursued infringement allegations against the

8

same product for over six years on closely related patents, and hav[e] engaged in extensive fact and expert discovery, a five day jury trial, two appeals, and summary judgment briefing on remand proceedings," but still allege the same factual allegations.[7] (D.I. 54 at 3)  Defendant concludes that the accused steel sheet products are not "colorably different" or "materially different" than those asserted in the previous case.  At most, plaintiffs have alleged heat-treatments by third parties that might make defendant's steel sheet products meet the claims.  However, without an allegation that defendant's steel sheet products are materially different than those which were the subject of Civ. No. 10-50, the allegations must fail as they do not state a plausible claim for direct infringement.  (D.I. 51 at 3-4)

11.  Plaintiffs, in contrast, argue that the aluminum-coated boron steel sheet products at issue in the Civ. No. 10-50 case are different from the steel sheet products now accused of infringement.  Plaintiffs base their argument on a declaration (presented in opposition for a motion for summary judgment in Civ. No. 10-50) in which it is averred that plaintiffs "had evidence which came into existence after the [Civ. No. 10-50] case trial, that [defendant] was selling aluminum-coated boron containing steel that was being hot-stamped to achieve an ultimate tensile strength of greater than 1500 MPa and then shipped to automotive makers."  (D.I. 51 at 2, ex. A)  Plaintiffs characterize the amended complaint as alleging "infringement based on [defendant's] products that are now subjected to a hot[-]stamping operation that results in the steel having an ultimate tensile strength greater than 1500 MPa;" that defendant "now designs its new, post-

---

[7] Defendant argues that any actionable claims based on the RE940, which did not issue until June 2014, would also be subject to intervening rights under 35 U.S.C. § 252.

9

2011 products to meet automotive product[] specifications requiring steel with an ultimate tensile strength greater than 1500 MPa;" that defendant "has knowledge that its post-2011 products meet the 1500 MPa specifications after hot[-]stamping;" and that defendant's "products are not suitable for substantial non-infringing uses." (D.I. 51 at 3-4)

12. In light of the procedural labyrinth plaintiffs have created, I believe the only fair way to resolve this litigation is to determine whether defendant has changed its products since the first round of discovery was undertaken in connection with the '805 patent. In this regard, keep in mind that plaintiffs have always sought evidence that the accused steel sheet products had a tensile strength of 1500 MPa or greater.[8] In connection with the first trial, plaintiffs failed to produce such evidence after full blown discovery and testing. On remand, plaintiffs produced a declaration that, at best, raised a question as to whether the accused steel sheet products had changed.[9] The court did not open the record on remand, an issue still on appeal.

13. Certainly it would be inappropriate to open the record absent any demonstrated "changes" in the accused steel sheet products, based on collateral estoppel. It is equally certain that new products can be the subject of new infringement suits. Given the protracted history of this litigation, the court is reluctant to simply open

---

[8] And the record indicates that the automobile industry's specifications have not changed either. Oral Argument commencing at 32:08, *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Civ. No. 2011-1638), held on September 6, 2012, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings?title=&field_case_number_value =11-1638&field_date_value2%5Bvalue%5D%5Bdate%5D=&=Search.
[9] The court listened to the oral argument related to the appeal in *ArcelorMittal I*. Contrary to the Federal Circuit's observation, defendant's counsel did not concede that the accused steel sheet products had an ultimate tensile strength of 1500 MPa or greater. (Contrast 700 F.3d at 1322 and the argument commencing at 32:08)

10

the doors to discovery without some modicum of proof (more substantive than the declaration already submitted) that the accused steel sheet products have changed. To that end, I will require defendant to: (1) identify the most knowledgeable corporate deponent to testify about the manufacture of the accused steel sheet products (including the tensile strength requirements) from 2010 through 2013 (when the instant law suit was filed and plaintiffs were required to have a good faith basis for filing such); and (2) produce the manufacturing specifications (including those relating to the tensile strength requirements) for the same time period.[10] The court will conduct an in-person status conference at the conclusion of such discovery.[11]

14. **Conclusion.** For the foregoing reasons, the court denies defendant's motion to dismiss.

IT IS FURTHER ORDERED that:

15. Defendant shall produce the documents required above on or before **May 17, 2016**.

---

[10] The court has placed the onus of the discovery on defendant for two reasons. In the first instance, despite the fact that plaintiffs asserted the existence of a "new" product in the 2013 declaration, defendant did not respond with anything more substantive than attorney argument. Second, given plaintiffs' aggressive litigation tactics, the court has little faith that plaintiffs would conduct reasonable, focused discovery on their own. Consider this discovery something akin to the mandatory exchange of relevant materials that occurs at the outset of many patent cases.

[11] Issues such as indirect infringement, the "in the form of a delivery coil" limitation, and intervening rights are better addressed in light of a more fulsome record. The court, in its discretion, denies defendant's alternate motion to stay the case pending the Federal Circuit's decision in *ArcelorMittal II*. The court may revisit this issue at the conclusion of the abbreviated discovery period.

16.  Defendant shall identify the deponent by **May 17, 2016** and make the deponent available for deposition to be completed before **June 14, 2016**.  The deposition shall be limited to five (5) hours, absent agreement by the parties.

17.  The court will conduct an in-person status conference on **June 21, 2016,** at **4:30 p.m.** in courtroom 4B on the 4th Floor, J. Caleb Boggs Federal Building, 844 King Street, Wilmington, Delaware.

United States District Judge