IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARCELORMITTAL and )
ARCELORMITTAL ATLANTIQUE ET )
LORRAINE, )
 )
        Plaintiffs, )
 )
v. )        Civ. No. 13-685-SLR
 )
AK STEEL CORPORATION, )
 )
        Defendant. )

## MEMORANDUM ORDER

At Wilmington this \9t̶ day of January, 2017, having reviewed the papers filed in

connection with defendant's motion for summary judgment;

IT IS ORDERED that the motion (D.I. 68) is granted, for the following reasons:

1. **Procedural background.**[1]  Plaintiffs filed the present action for patent

infringement on April 16, 2013 for infringement of U.S. Patent No. RE44,153E ("the

RE153 patent").[2]  Such patent was obtained during the pendency of the appeal of Civ.

No. 10-050,[3] in which action plaintiffs asserted U.S. Patent No. 6,296,805 ("the '805

patent") against defendant[4] by complaint filed in January 2010.  The litigation proceeded

---

[1] A fuller recitation of the procedural background may be found in the court's previous
orders.  (D.I. 41, 58)

[2] On December 4, 2015, the court granted defendant's motion for summary judgment in
Civ. No. 10-050, and entered judgment of no infringement and invalidity of the RE153
patent.  (D.I. 19, 20)

[3] The procedural history of which is only recounted to the extent needed for the
resolution of this motion.

[4] In addition to AK Steel Corporation, Severstal Dearborn, Inc. and WheelingNisshin,
Inc.

to claim construction and trial, ending in a jury verdict in defendant's favor.  On appeal,
the Federal Circuit upheld the claim construction in part and reversed in part.[5]  *See
ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012) ("*ArcelorMittal
I*").  On December 4, 2015, the court granted plaintiffs' motion to file a first amended
complaint, substituting U.S. Patent No. RE44,940 ("the RE940 patent") (another reissue
of the '805 patent) for the RE153 patent.  (D.I. 19, 20)  On April 19, 2016, the court
denied defendant's motion to dismiss, allowing plaintiffs focused discovery to determine
whether (as plaintiffs allege) defendant's accused steel sheet products have changed.
(D.I. 58)  The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. **Standard of Review.**  "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the
burden of demonstrating the absence of a genuine issue of material fact.  *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986).  A party
asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be
supported either by citing to "particular parts of materials in the record, including
depositions, documents, electronically stored information, affidavits or declarations,
stipulations (including those made for the purposes of the motions only), admissions,
interrogatory answers, or other materials," or by "showing that the materials cited do not
establish the absence or presence of a genuine dispute, or that an adverse party cannot

---

[5] Specifically, the Federal Circuit reversed the construction for "hot-rolled steel sheet"
and upheld the construction for "very high mechanical resistance," that is, "the flat-rolled
steel has been subjected, after rolling, to additional controlled heating and cooling and
has an ultimate tensile strength of 1500 MPa or greater."

2

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

3. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

4. **Defendant's product.** At the time of Civ. No 10-050, defendant manufactured steel sheets (called "AXN").[6]  Plaintiffs alleged that such steel sheets, when subjected to hot stamping, would infringe the asserted claims.  Plaintiffs' expert testified that defendant had a third party hot stamp the steel sheets.  (D.I. 70 at DA97, 102-07, 116-177, 138; D.I. 82 at DA232)  Plaintiffs' expert tested a sample of the steel sheets (tensile strength 605 MPa) by having a third party hot stamp the steel sheets and then measuring the tensile strength (tensile strength 1442 +/- 34 MPa).  (D.I. 70 at DA91; D.I. 74 at PA18, 24-25)  Plaintiffs' expert testified that defendant's AXN steel sheets satisfied the required tensile strength after hot stamping, in part because a tensile strength of 1442 MPa "is going to be equivalent to something that's a little bit over 1500."  (D.I. 70 at DA138)  Plaintiffs presented certain automotive specifications for hot-stamped automotive parts, requiring tensile strengths from below 1500 MPa to above 1500 MPa.  (D.I. 70 at DA138, 190-215)  Plaintiffs introduced invoices from Ford Motor Company ("Ford"), showing that Ford sought to purchase the steel sheets, which were to be delivered to a specified commercial hot stamper (Magna Eagle Bend) for hot stamping and making into automotive pillar assemblies.  (D.I. 74 at PA12-15)  The orders were ultimately not fulfilled.  (D.I. 74 at PA4)

5. Defendant's deponent testified that the chemistry of the steel sheets has not changed since 2009 and the only revisions to the AXN manufacturing specification have been to narrow the acceptable ranges of certain constituents to make the product more

---

[6] Defendant's deponent was deposed on June 14, 2016 for the purpose of focused discovery after the court's denial of defendant's motion to dismiss.  (D.I. 58)  He explained that "AXN" used "X" to mean an "experimental grade as [defendant] introduce[s] a new product."  (D.I. 70 at DA18)

4

consistent.  (D.I. 70 at DA17-21, 42, 53-54)  The manufacturing specifications show that the AXN product (at issue in Civ. No. 10-050) uses the same "aims" (target amounts) for certain constituents of the chemical composition as the AQN product (renamed in 2012) and the Ultralume product (currently manufactured).  (D.I. 70 at DA66-70)  The sample of the steel sheets (made according to defendant's AXN manufacturing specification) hot stamped and tested in Civ. No. 10-050 meets the current Ultralume manufacturing specification.  (D.I. 70 at DA66-69, 83, 90)  The Ultralume brochure describes that it may be hot stamped, which "increases the tensile strength of the steel from approximately 600mPa to 1,400 MPa and higher."  The brochure depicts automotive parts.  (D.I. 74 at PA29-41)

6.  **Collateral estoppel.**  In *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), the Supreme Court held that, in the patent context, defensive collateral estoppel may be used if the accused infringer shows: "(1) that a patent was found invalid in a prior case that had proceeded through final judgment and in which all procedural opportunities were available to the patentee; (2) that the issues litigated were identical; and (3) that the party against whom estoppel is applied had a full and fair opportunity to litigate." *Abbott Labs. v. Andrx Pharma., Inc.*, 473 F.3d 1196, 1203 (Fed. Cir. 2007).  Regional Circuit law controls the determination of whether prior findings invoke collateral estoppel pursuant to these guidelines.  *Id.* at 1202-03.

7.  In this regard, the Third Circuit has held that collateral estoppel applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid

5

judgment; and (4) the determination [was] essential to the prior judgment." *Anderson v. C.I.R.*, 698 F.3d 160, 164 (3d Cir. 2012) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)). In determining "whether a patentee has had a full and fair chance to litigate the validity of his patent," the court should consider "whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation." *Blonder–Tongue*, 402 U.S. at 333, 91 S.Ct. 1434. Collateral estoppel may also operate to bar relitigation of common issues in actions involving different but related patents. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310 (Fed. Cir. 2001). "[P]roof of [non]-infringement by collateral estoppel is only appropriate in limited circumstances, where it is shown that a close identity exists between the relevant features of the accused device and the device previously determined to be [non]-infringing." *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1333 (Fed. Cir. 2008); *see also Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055 (Fed. Cir. 2014) ("[T]he trial court's findings that [defendant's] products . . . were not materially different from the products at issue in the [prior litigation] would bar plaintiff from asserting those claims."); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (noting that claim preclusion does not apply with respect to infringement unless the accused device and the device previously held infringing are "essentially the same," meaning that the differences between them are merely "colorable" or "unrelated to the limitations in the claim of the patent") (citations omitted); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987) (holding that claim preclusion did not apply because a "device not previously before the

court, and shown to differ from those structures previously litigated, requires a determination on its own facts").

8. **Direct infringement.** Defendant moves for summary judgment on plaintiffs' direct infringement claim as barred by collateral estoppel.  Plaintiffs argue that "the 2010 product" (at issue in Civ. No. 10-050) was the AXN "experimental" product, which was not commercially hot stamped to form a production automotive part.  In contrast, "the post-2010 product" (presently accused) is the Ultralume steel sheets, which are commercially hot stamped to form production automotive parts.  Relying on expert reports from Civ. No. 10-050, plaintiffs again allege that the different equipment and processes used by the commercial hot stampers result in new and different products that reach the claimed tensile strength of 1,500 MPa.  (D.I. 73 at 10-12)  In sum, plaintiffs argue that "each post-2010 product differs when made by a different commercial hot stamper and the stamped post-2010 products necessarily differ from the unstamped 2010 product."[7]  (D.I. 73 at 6)

9. Plaintiffs' arguments regarding the differences between the 2010 product and the post-2010 product ring hollow.  Plaintiffs accuse the same product and conduct of infringement at bar as it did in Civ. No. 10-050 – defendant's provision of steel sheets to third parties for hot stamping, which hot-stamped product may have a tensile strength above 1500 MPa.  Defendant currently provides steel sheets (which have the same composition as the steel sheets at issue in Civ. No. 10-050) to third parties.  The court

---

[7] Thereby comparing apples (**stamped** post-2010 products) to oranges (**unstamped** 2010 product), contrary to the arguments actually made in Civ. No. 10-050.

concludes that the product at issue is the same and cannot – prior to hot stamping – be infringing as the steel sheets have a tensile strength of about 600 MPa.

10. Plaintiffs in Civ. No. 10-050 accused the same conduct (hot stamping of steel sheets) of infringement. The issue was litigated to a verdict of non-infringement under the doctrine of equivalence, in part based on the lack of evidence of the hot-stamped steel sheet meeting the limitation requiring a tensile strength of 1500 MPa. Subsequently, plaintiffs did not point to (and the court concluded that there was no) record evidence that the 2010 products have an ultimate tensile strength above 1500 MPa.[8]  (D.I. 41 at 6)  At bar, defendant is not itself hot stamping the steel sheet or paying to have it hot stamped.  That defendant may ship the steel sheets to a third party hot stamper on behalf of its purchaser is of no consequence to the infringement analysis.[9]  There is no material factual dispute regarding the chemistry of the steel sheets, nor of the tensile strength of the steel sheets as manufactured and shipped (about 600 MPa) by defendant.[10]  This forecloses the allegations of direct infringement.

---

[8] The court listened to the oral argument related to the appeal in *ArcelorMittal I*. Contrary to the Federal Circuit's observation, defendant's counsel did not concede that the accused steel sheet products had an ultimate tensile strength of 1500 MPa or greater.  (Contrast 700 F.3d at 1322 and the argument commencing at 32:08)

[9] Plaintiffs seek to confuse this issue by arguing that further discovery of the relationship between defendant and the commercial hot stampers is needed to determine whether defendant sells or offers for sale the **stamped** post-2010 product that meets all the limitations of the claims.  (D.I. 73 at 13)  However, the evidence relied on by plaintiffs confirms that the automakers are buying the steel sheets from defendant and shipping them (or having defendant ship them on their behalf) to the hot stampers.

[10] Plaintiffs point out that defendant's deponent was unable to confirm that no changes have occurred with regard to the aluminum-silicon coating, including the thickness (weight) of the coating.  Plaintiffs allege such changes (if any) would impact the tensile strength of the "**stamped** product."  (D.I. 73 at 6-7)

11. Plaintiffs argue that defendant might use "some type of theory of divided infringement" to "isolate itself from the actions of the hot stampers or the automakers," and request discovery as to whether defendant directs or controls the performance of the hot stampers or is in a joint enterprise. (D.I. 73 at 13-14) Plaintiffs' request for discovery is unnecessary given that divided infringement applies to method claims in particular circumstances, not to the product by process claims at bar. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.").[11]

12. Without direct infringement, there can be no indirect infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2115 (2014); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Nevertheless, the court makes the following observations regarding indirect infringement. Plaintiffs argue that, after further discovery, they may allege induced and/or contributory infringement based upon defendant's "actions in the design and preparation of the post-2010 stamped product, and the nature of [defendant's] commercial relationships with the hot stampers and the automakers." (D.I. 73 at 14) Plaintiffs litigated both induced and contributory infringement in Civ. No. 10-050, arguing that defendant designed the steel sheets to meet the automaker specifications and should be liable based on encouraging its customers to hot stamp the steel sheets. (D.I. 70 at DA102-04, 126-27, 139-40)

---

[11] Moreover, given that the record indicates third party hot stamping in 2010, the requested discovery should have been pursued in Civ. No. 10-050, but apparently was not. (D.I. 70 at 126-27)

9

13.  As to contributory infringement, plaintiffs would be required to establish, inter alia, that the steel sheets have no substantial non-infringing uses.  *Fujitsu*, 620 F.3d at 1326.  Plaintiffs allege that discovery is needed to determine whether the post-2010 products meet the tensile strength limitation after hot stamping by certain commercial hot stampers.  As was the case in Civ. No. 10-050, some of the automaker's specifications use hot-stamped steel sheets with tensile strengths lower than 1500 MPa.  Plaintiffs' argument that there are no "substantial non-infringing uses" falls short.

14.  The litigation in Civ. No. 10-050 involved the same parties, the same products, the same conduct, and the same issues.  Defendant's steel sheets were adjudged to be non-infringing with respect to the asserted claims in Civ. No. 10-050.  Defendant, therefore, should be "free to continue engaging in the accused commercial activity as a non-infringer."  *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056, 1058 (2014) ("allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.").  Although defendant has ramped up its production and updated its brochure, it is "continuing its business as usual post-final judgment."  *Id.* at 1056.

15. **Conclusion.** For the aforementioned reasons, defendant's motion for summary judgment (D.I. 68) of non-infringement is granted.[12, 13] The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiffs.

United States District Judge

---

[12] The court declines to reach defendant's argument regarding the obviousness of claims 27-29 of the RE940 patent.

[13] Plaintiffs request that the court postpone resolution of this motion pending the resolution of the appeal in Civ. No. 10-050. *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) (Finding that "early application of res judicata, though technically permissible, can create later problems if a first judgment, relied on in a second proceeding, is reversed on appeal."). In Civ. No. 10-050, the court granted defendant's motions for summary judgment and entered judgment of no infringement and invalidity of the RE153 patent. As noted in that opinion, the instant quandary is one of plaintiffs' own making. (Civ. No. 10-050, D.I. 338) Regardless of the outcome of the appeal, it remains unclear how plaintiffs could circumvent the lack of direct infringement on the facts at bar. The court declines to penalize defendant for plaintiffs' litigation strategies.